UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

JOHN TROY *on behalf of* XUE HUI ZHANG,

                        Petitioner,

        v.
                                                                9:19-CV-1010
                                                                (BKS/CFH)

WILLIAM BARR, in his official capacity as the
Attorney General of the United States; UNITED STATES
DEPARTMENT OF HOMELAND SECURITY; GWYNNE
DiNOLFO, Dir. of the Albany Field Office of the U.S.
Immigration and Customs Enforcement; PATRICK A.
RUSSO, Sheriff of Rensselaer County; KEVIN
McALEENAN; Acting Secretary of Homeland Security;
MATTHEW ALBENCE, Acting Dir. of the
U.S. Immigration and Customs Enforcement; CARMEN
WHALING, Dir. of the Buffalo Field Office of the U.S.
Immigration and Customs Enforcement,

                        Respondents.

_____

APPEARANCES:                                                    OF COUNSEL:

TROY LAW, PLLC                                                  JOHN TROY, ESQ.
41-25 Kissena Boulevard
Suite 119
Flushing, NY 11355

HON. GRANT C. JAQUITH                                           MARY E. LANGAN, ESQ.
United States Attorney for the                                  Ass't United States Attorney
Northern District of New York
100 South Clinton Street
P.O. Box 7198
Syracuse, New York 13261

BRENDA K. SANNES
United States District Judge

**DECISION and ORDER**

## I.    INTRODUCTION

Petitioner's counsel, John Troy, filed a petition for a writ of habeas corpus on behalf of the petitioner, Xue Hui Zhang, pursuant to 28 U.S.C. §2241.  Dkt. No. 1, Petition ("Pet.").[1] Attached to the petition was also a proposed temporary restraining order.  Dkt. No. 1-1, Order to Show Cause.  Petitioner also paid the filing fee.  Dkt. Entry dated 08/15/19 (indicating receipt number for paid filing fee).[2]

On August 20, 2019, petitioner filed an amended petition and motion for preliminary injunction and temporary restraining order.  Dkt. No. 2, Amended Petition ("Am. Pet."); Dkt. No. 3, Motion for Preliminary Injunction & Temporary Restraining Order ("TRO").  The amended petition argues petitioner's federal and constitutional rights were violated when respondents, specifically the Immigration and Customs Enforcement ("ICE") agents who arrested petitioner and the agency which allowed his detention, retaliated against him by moving forward with petitioner's removal proceedings in an effort to preclude him from litigating his pending federal law labor suit.[3]  Am. Pet. at 4-5.[4]  Both petitioner's amended petition and TRO request that for the duration of petitioner's labor law litigation (1) petitioner

---

[1] Pursuant to 28 U.S.C. § 2242, an application for habeas relief can be filed by the petitioner "or by someone acting in his behalf."

[2] The filing fee for a habeas corpus petition is $5.00.  28 U.S.C. § 1914(a).  Petitioner paid $400. Accordingly, the Clerk refunded $395 to the petitioner.

[3] Petitioner's labor law suit – a wage-and-hour employment rights case – is presently pending in this Court. *See Zhang et al. v. Ichiban Group, LLC et al.,* No. 1:17-CV-0148 (MAD/TWD).

[4] For the sake of clarity, citations to the parties' filings refer to the pagination generated by CM/ECF, the Court's electronic filing system.

be released from federal immigration custody and (2) respondents be enjoined from enforcing petitioner's removal order.[5]  Am. Pet. at 23; TRO at 1.  The amended petition also seeks (1) a declaration that petitioner's ongoing detention violated Due Process and The Fair Labor Standards Act ("FLSA"); (2) an award to petitioner of costs and reasonable attorneys' fees provided by the Equal Access to Justice Act, 28 U.S.C. § 2412; and (3) any other further relief which the Court deems just.  Am. Pet. at 23.

## II.   BACKGROUND

### A.   Immigration Proceedings

Petitioner is a native and citizen of the People's Republic of China ("China") who entered the United States on August 3, 2001, via the International Airport in Los Angeles, California as an immigrant without a visa.  Timothy Hancox Declaration ("Decl."), Dkt. No. 19-2, ¶ 5; *see also* Dkt. No. 19-3 at 4-6 (Determination of Inadmissibility completed in Lost Angeles in 2001); *Id.* at 7 (Notice of Removal completed in Los Angeles in 2001); *Id.* at 8-13 (sworn record of interview between petitioner and immigration inspector in Los Angeles in 2001).  Petitioner was paroled into the United States, after payment of a parole bond, and served with a Notice to Appear ("NTA").  Decl. ¶ 6; *see also* Dkt. No. 19-3 at 17-19 (parole bond); *id.* at 20 (I-94 Arrival Record indicating date of removal proceedings and termination of parole).  "The NTA notified [petitioner] that he was ineligible for admission to the United States because of his lack of valid travel or identification documents [and] . . . that he was subject to removal from the United States pursuant to [the] Immigration and Nationality Act ("INA")[.]"  Decl. ¶ 6*; see also* Dkt. No. 19-3 at 15-16.

---

[5]  Petitioner was released from immigration custody on conditions of supervised release on September 6, 2019.  Dkt. No. 19-1 at 2-4.

On November 9, 2001, petitioner appeared, with counsel, for a removal hearing before a New York City Immigration Judge ("IJ"): the hearing was rescheduled, and subsequently rescheduled again several more times, until an evidentiary hearing was conducted on August 6, 2002.  Decl. ¶¶ 7-9.  On August 6, 2002, the IJ ordered that petitioner be removed from the United States.  *Id.* ¶ 9; *see also* Dkt. No. 19-3 at 43-50 (IJ's Decision ordering removal). Petitioner appealed the removal order and, on December 30, 2003, the Board of Immigration Appeals ("BIA") dismissed the appeal.  Decl. ¶ 9; *see also* (Dkt. No. 19-3 at 32-39 (Notice of Appeal); *id.* at 53-60 (Memorandum of Law in Support of Appellant); *id.* at 62-63 (BIA decision denying appeal).  Petitioner then moved for reconsideration before the BIA; however, his application was denied on May 17, 2004.  Decl. ¶ 9; *see also* Dkt. No. 19-3 at 65 (decision denying motion for reconsideration).

On April 10, 2007, petitioner filed a motion to reopen which was subsequently denied, on June 11, 2007, for lack of jurisdiction.  Decl. ¶ 9; *see also* Dkt. No. 19-3 at 67 (order denying motion to reopen for lack of jurisdiction).  Petitioner then filed another motion to reopen with the BIA, which too was denied on October 22, 2007.  Decl. ¶ 9; *see also* Dkt. No. 19-3 at 69-72.

Lastly, on November 14, 2007, petitioner filed a Petition for Review ("PFR") and a Motion for a Stay of Removal with the United States Court of Appeals for the Second Circuit. Decl. ¶ 9; *see also* Dkt. No. 19-3 at 73-106.  The PFR was denied on December 15, 2008, and the Second Circuit issued its mandate on February 5, 2009.  *Id.*

In the midst of petitioner exhausting all available remedies, a warrant of removal was issued on January 10, 2005.  Decl. ¶ 10; *see also* Dkt. No. 19-3 at 123-24.  A subsequent warrant of removal was issued on December 27, 2007; however, it was not enforced while

4

the PFR was pending in the Second Circuit.  Decl. ¶ 10; *see also* Dkt. No. 19-3 at 135-36; *see e.g., Flores v. Holder*, 977 F. Supp. 2d 243, 248 (W.D.N.Y. 2013) (explaining that a forbearance policy is triggered upon the filing of a PFR whereby an alien will not be removed from the United States while his or her petition is pending before the circuit court).

On August 12, 2019, the Albany Fugitive Operations Team arrested petitioner based upon a tip from the local Sheriff's deputy.  Decl. ¶ 11.  Petitioner was first detained by ICE in Rensselaer County and then at the Federal Detention Center in Batavia, New York.  *Id.*  On August 20, 2019, petitioner was served with a "Warning for Failure to Depart" and provided with instructions on how to assist in his removal back to China.  *Id.*  ¶ 12.  On September 6, 2019, petitioner was released by ICE on an Order of Supervision and was scheduled to report back to ICE on October 10, 2019.  *Id.*  ¶¶ 13, 15; *see also* Dkt. No. 19-3 at 139-48.

### B.    Labor Law Litigation History

Petitioner originally filed his claim against David Ip and the Ichiban Restaurant with the New York State Department of Labor in December of 2015.  Am. Pet. at 10.  An investigation followed and, while it was pending, petitioner asserts that a co-worker told petitioner that Ip had a message for him: "if [petitioner] dared to attend the [Department of Labor] Hearing, Ip will be calling ICE to arrest [petitioner]."  *Id.*  Petitioner did not attend the hearing and, despite petitioner's assertions that the "investigation found numerous [labor law] violations . . . and substantial damages owed to [petitioner]," the case was ultimately dismissed.  *Id.*

Two years later, petitioner brought a civil suit against the same defendants, in this Court, seeking relief for unpaid wages and overtime.  Am. Pet. at 10; *see also Zhang et al. v. Ichiban Group, LLC et al.*, No. 1:17-CV-0148 (MAD/TWD).  Court-ordered depositions were scheduled for August 12, 2019, in Latham, New York.  Am. Pet. at 11.  The deposition

commenced and, when the parties broke for lunch, petitioner was arrested by ICE agents in the parking lot of the diner where petitioner and his counsel had intended on eating. *Id.* at 11-12. "ICE was unaware that [petitioner] was involved in any litigation at the time of the encounter." Decl. ¶ 11. Petitioner contends that Ip and Ichiban Restaurant "tip[ped] ICE [off as] to [petitioner's] location in an effort to frustrate [petitioner's] enforcement of the labor laws by pursing . . . civil litigation in th[is Court.]" Am. Pet. at 14.

## III.   DISCUSSION

At the outset, this Court must determine whether it has jurisdiction over the pending motion and petition. *See e.g., Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 434 (2011) ("[F]ederal courts have an independent obligation to ensure that they do not exceed the scope of their jurisdiction, and therefore they must raise and decide jurisdictional questions that the parties either overlook or elect not to press."). Respondent seeks dismissal of the petition because the statutory provisions of 8 U.S.C. §§ 1252(a)(5), 1252(b)(9) and 1252(g) deprive the Court of jurisdiction to enjoin petitioner's removal. Dkt. No. 19 at 10-14. Petitioner disagrees. Dkt. No. 21 at 7-11.

### A.   Jurisdiction to Stay Removal

The REAL ID Act of 2005, codified at 8 U.S.C. § 1252, divested district courts of jurisdiction to decide direct and indirect challenges to final orders of removal. *Delgado v. Quarantillo*, 643 F.3d 52, 55 (2d Cir. 2011). Instead, "[n]otwithstanding any other provision of law (statutory or nonstatutory), including . . . habeas corpus . . . a petition for review filed with an appropriate court of appeals in accordance with this section shall be the sole and exclusive means for judicial review of an order of removal[,]" 8 U.S.C. § 1252(a)(5), and "no court shall have jurisdiction, by habeas corpus under section 2241 . . . or by any other

6

provision of law (statutory or nonstatutory), to review [a removal] order or . . . questions of law or fact" "arising from any action taken or proceeding brought to remove an alien." *Id.* § 1252(b)(9).  In sum, "[s]ections 1252(a)(5) and 1252(b)(9) channel all challenges to removal orders and removal proceedings to the courts of appeals." *Asylum Seeker Advocacy Project v. Barr,* No.1:19-CV-6443, 2019 WL 4221479, *2 (S.D.N.Y. July 11, 2019) (citing *J.E.F.M. v. Lynch,* 837 F.3d 1026, 1031 (9th Cir. 2016) ("Taken together, § 1252(a)(5) and § 1252(b)(9) mean that *any* issue – whether legal or factual – arising from *any* removal-related activity can be reviewed *only* through [a petition for review filed with the correct federal appellate court.]")).  "[H]owever, . . . a suit brought against immigration authorities is not *per se* a challenge to a removal order; whether the district court has jurisdiction will turn on the substance of the relief that a party is seeking."  *Delgado*, 643 F.3d at 55.

Additionally, 8 U.S.C. § 1252(g) provides that "notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 [habeas petitions] . . . no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders[.]"  "The Supreme Court has narrowly read § 1252(g) to apply only to three discrete actions that the Attorney General may take - i.e., his decision or action to *commence* proceedings, *adjudicate* cases, or *execute* removal orders." *Vidhja v. Whitaker*, No. 1:19-CV-613, 2019 WL 1090369, at *4 (S.D.N.Y. Mar. 6, 2019) (citing *Reno v. American-Arab Anti-Discrimination Committee*, 525 U.S. 471, 482, 486 (1999) (internal quotation marks omitted and emphasis in original)).

Here, petitioner does not challenge the existence or validity of the removal order issued against him.  He asks this Court to stay its execution for the pendency of his parallel

civil action.   Petitioner argues that this case challenges federal officials' wanton and

retaliatory actions in apprehending him to preclude him from maintaining his labor law claims.

Dkt. No. 21 at 5.   Specifically, petitioner "seeks only to be restored to his status quo ante and

. . . be allowed to prosecute his Fair Labor Standards Act collective class action for back

wages without fear of deportation."   *Id.*   However, petitioner's request for a stay of the

execution of removal falls squarely within the statute's divestiture of jurisdiction.

"Numerous courts in this Circuit have held . . . that the request for a stay of removal

constitutes a 'challenge to a removal order,' and that accordingly district courts lack

jurisdiction to grant such relief."   *Vidhja*, 2019 WL 1090369, at *3 (quoting *Vasquez v. United

States,* No. 1:15-CV-3946, 2015 WL 4619805, at *4 (S.D.N.Y. Aug. 3, 2015)).[6]   In *Vasquez*,

for example, three plaintiffs brought an action on behalf of themselves and a purported class,

pursuant to the Administrative Procedure Act and *Bivens v. Six Unknown Name Agents of*

*Fed. Bureau of Narcotics*, 403 U.S. 388 (1971) alleging claims against federal officials

regarding their detention and removal.   *See Vasquez*, 2015 WL 4619805.   Plaintiffs filed an

emergency motion to stay their removal pending the outcome of their civil litigation.   *Id.*, 2015

WL 4619805, at *1.   There, as here, the removal order was not challenged.   However, "the

relief sought by the [plaintiff's] . . . motion [wa]s a stay of her removal.   Accordingly, whatever

---

[6]   Some courts in this Circuit have found jurisdiction when there was a challenge to ICE's "legal authority" to exercise its discretion.   *See Calderon v. Sessions*, 330 F. Supp. 3d 944, 954-56 (S.D.N.Y. 2018) (finding jurisdiction to review ICE's legal authority to exercise discretion to remove petitioner while petitioner was pursuing a right to seek relief provided to immigrants by ICE); *S.N.C. v. Sessions*, No. 1:18-CV-7680, 2018 WL 6175902, at *5 (S.D.N.Y. Nov. 26, 2018)(distinguishing legal authority over a removal order from a discretionary decision regarding removal orders).

Here, petitioner does not challenge ICE's "legal authority" to exercise its removal discretion; instead, petitioner challenges ICE's discretionary decision to execute its removal order, which this Court does not have jurisdiction to review.   *Cf. Calderon*, 330 F.3d 944, 954 (retaining jurisdiction, despite a valid removal order, while petitioner rightfully pursued a provisional waiver); *S.N.C.*, 2018 WL 6175902, at *4 (retaining jurisdiction to decide whether ICE could deport petitioner while her T-Visa application was pending).

the merits of her underlying claims, the Court d[id] not have jurisdiction to grant th[e] motion."
*Id.*, 2015 WL 4619805, at *4.

The Southern District employed that same analysis in a later case where a petitioner
sought a stay of removal during the pendency of two actions which were simultaneously
being litigated: his habeas corpus petition and his third motion to reopen his immigration
proceedings with the BIA. *Vidhja*, 2019 WL 1090369, at *1.  Petitioner had been denied
asylum and ordered removed fifteen years prior to filing the habeas petition and third motion
to reopen.  *Id.*  The court reasoned that § 1252(a)(5) stripped the court of its jurisdiction to
grant a stay of removal because, as in *Vasquez*, the substance of the relief that the petitioner
was asking for was statutorily prohibited.  *Id.*, 2019 WL 1090369, at *2-*3.

Similarly, the court in *Vidhja* also determined that "[p]etitioner's request for a stay of
removal pending resolution of his [pending cases] falls squarely within one of the 'three
discrete actions' to which Section 1252(g) applies; the execution of removal orders."  2019
WL 1090369, at *4; *see also Asylum Seeker Advocacy Project,* No. 19-CV-6443, 2019 WL
4221479, at *3 (S.D.N.Y. Sept. 5, 2019) (finding the court lacked jurisdiction to issue a stay
of removal where that order would "ha[ve] the effect of temporarily barring the Government
from acting on certain *in absentia* removal orders [and leaving] . . . the Government . . .
without a mechanism to enforce the removal orders at least until it can schedule future
hearings," which resulted "in substance, if not form," to a challenge to the underlying removal
orders) (internal quotation marks and citations omitted)*; Barros Anguisaca v. Decker*, No.
1:18-CV-7493, 393 F. Supp. 3d 344, 350 (S.D.N.Y.  2019) (finding that "if th[e c]ourt were to
grant the relief [petitioner] seeks and bar the government from removing [petitioner], then the
Government would be without a mechanism to enforce the removal order until such time that

the [other courts] adjudicated [petitioner's other pending motions.]") (internal quotation marks and citations omitted).

So too here.  Petitioner's request for a stay of removal falls squarely into a narrowly and clearly defined subset of situations in which the REAL ID Act has explicitly stripped the Court of its jurisdiction -- the discretionary execution of removal orders.  The effect of granting this relief, regardless of the merits of the underlying labor law claim and the proposed additional claim of retaliation pursuant to the FLSA, results in the Government not having a mechanism to enforce a validly entered removal order for an undefined amount of time.  The Court lacks jurisdiction to stay the execution of the removal order.  Accordingly, petitioner's emergency motion to stay removal is denied and the claims seeking a stay of removal within the habeas petition are dismissed.

**B.    Habeas Petition**

Petitioner contends he is entitled to federal habeas relief because his employer – in conjunction with the ICE agency and its officers – acted unlawfully and unconstitutionally by apprehending and commencing execution of the removal order entered against petitioner in retaliation for petitioner filing a labor law suit.  Am. Pet. at 4-5.  In addition to the previously discussed stay of removal, petitioner seeks release from custody, damages and attorneys fees.  *Id.* at 23.  Petitioner has been released on conditions from his immigration detention, rendering the most essential function of this habeas petition already satisfied.  Petitioner argues that his release from detention at an immigration facility does not moot his petition because the conditions under which he now must abide "effects a present, substantial curtailment of petitioner's liberty and continues to render him within the custody of ICE."  Dkt No. 21 at 6 (citing *Ragbir v. Holder*, 923 F.3d 53, 76 (2d Cir. 2019)).  The Court does not

disagree.  However, given that petitioner sought release from detention, which was granted, and a stay of removal, which the Court does not have the authority to grant, all that remains are petitioner's requests for damages based on his Due Process[7] and FLSA claims. Respondent alleges that petitioner is unable to sue the government or its representatives under an FLSA theory.  Dkt. No. 19 at 17-19.

Without commenting on the merits of petitioner's retaliation argument, this Court finds that a habeas corpus petition is an improper vehicle within which to bring petitioner's damages claims.  "The traditional function of the writ [of habeas corpus] is to secure release from illegal custody . . . [however], the relief that the petitioner seeks, which sounds in habeas, will not redress the alleged harm that he suffered, which sounds in tort." *Yearwood v. Barr*, 391 F. Supp. 3d 255, 260 (S.D.N.Y. 2019) (internal quotation marks and citations omitted).

Redressability for any alleged retaliation will best be found through the enforcement mechanisms provided, and already being pursued, by petitioner in his parallel civil proceeding brought pursuant to the FLSA.  Ultimately, "[t]he mismatch between the relief that the petitioner seeks and the harm he alleges makes a petition for a writ of habeas corpus an improper vehicle for his claims." *Yearwood*, 391 F. Supp. 3d at 261 (citing *Preiser v. Rodriguez*, 411 U.S. 475, 494 (1973) (explaining that "the traditional purpose of habeas corpus" is to seek "immediate or more speedy release" from custody and that "habeas corpus is not an appropriate or available federal remedy" for damages claims)).

**C.     Other Grounds for Jurisdiction**

---

[7]The Court notes that it is not clear what petitioner's due process claim is.

11

Petitioner also contends that his habeas petition provides the Court with several other sources of appropriate jurisdiction.  Petitioner's assertions are incorrect.  To the extent petitioner alleges that the Administrative Procedure Act ("APA") provides jurisdiction, such contentions are incorrect in situations like this where a statute, like the REAL ID Act, precludes judicial review.  *Ferdous v. Johnson*, No. 1:15-CV-0122, 2015 WL 9581815, at *5 (E.D.N.Y. Dec. 30, 2015) (citing *Delgado*, 643 F.3d at 55).  Moreover, the Declaratory Judgment Act ("DJA") "is remedial, not jurisdictional . . . [a]s a result, 28 U.S.C. § 2201 does not provide the Court with jurisdiction over [petitioner's] claims."  *Id.*,  2015 WL 9581815, at *6.  Additionally, "the Second Circuit has explicitly held, a[ petitioner] cannot evade the restrictions of INA section 1252(a)(5) by styling [his] challenge as a mandamus action in order to claim jurisdiction under 28 U.S.C. § 1361."  *Id.* (internal quotation marks and citations omitted).

III.   **CONCLUSION**

**WHEREFORE**, it is

**ORDERED** that the petitioner's motion for preliminary injunction and temporary restraining order, Dkt. No. 3, is **DENIED** because the Court does not have jurisdiction to grant the motion; and it is

**ORDERED** that the portion of petitioner's amended petition, Dkt. No. 2, which seeks a stay of removal is **DISMISSED** because the Court has no subject matter jurisdiction over said claims; and it is

**ORDERED** that the remainder of petitioner's amended petition, Dkt. No. 2, seeking damages and relief related to his Anti-Retaliation FLSA claims are **DENIED;** and it is

**ORDERED** that the amended petition, Dkt. No. 2, is **DISMISSED**.

Dated:  October 15, 2019

Brenda K. Sannes
U.S. District Judge